# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

DAVID E. BELL,            )
                               )
                               )
          Plaintiff,       )
                               )
v.                           )      No.  05-CV-82-SAJ
                               )
JO ANNE B. BARNHART,     )
Commissioner of Social Security    )
Administration,            )
                               )
          Defendant.     )

## OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[2]  Plaintiff asserts that the Commissioner erred because (1) the Plaintiff has a severe mental impairment; and (2) the ALJ failed to order a consultative examination of Plaintiff.  For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff's record contains an undated letter by Susan Marshall, M.D., requesting gastric bypass surgery for Plaintiff for morbid obesity.  [R. at 17].  The letter has a notation on it that provides that it should be filed in Plaintiff's chart and sent when Plaintiff obtains disability insurance.  [R. at 17].

---

[1]   This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[2]   Administrative Law Judge Denzel R. Buxick (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated October 20, 2003.  [R. at 28 -41].  Plaintiff appealed the decision by the ALJ to the Appeals Council.  The Appeals Council declined Plaintiff's request for review on December 17, 2004.  [R. at 5].

Plaintiff was born November 19, 1963.  [R. at 69].  In his disability report, Plaintiff wrote that he was unable to sleep more than four hours each night.  [R. at 83].

Plaintiff completed a disability supplemental interview outline.  [R. at 100].  Plaintiff wrote that he woke at 5:30 a.m. and made coffee.  Plaintiff noted that he drank his coffee and that for the remainder of the day he listened to his radio.  [R. at 100].  Plaintiff sleeps for about two to four hours each night due to his sleep apnea.  [R. at 100].  Plaintiff indicated that he lived in a house on three acres with a friend, and that he had become more depressed since he had been unable to work.  [R. at 100].  According to Plaintiff, he prepares his own meals, but his meal preparation sometimes takes one hour, during which time he sits in a chair by the stove.  [R. at 100].

Plaintiff noted that he is able to walk but that he is not able to bend over due to shortness of breath.  [R. at 102].  Plaintiff does his laundry, but it takes him one day to do it.  Plaintiff is not able to clean his floors.  [R. at 103].  Plaintiff shops for groceries approximately two times each month but purchases very little.  Shopping takes him approximately 45 minutes to one hour.  [R. at 103].  Plaintiff wrote that he enjoys fishing, but that he was unable to fish very often due to his condition.  [R. at 104].

In a reconsideration of disability report, Plaintiff wrote that he continued to have breathing problems and was unable to walk much or do any household work.  The reconsideration report is dated September 16, 2002.  [R. at 107].

Plaintiff was treated for an hiatial hernia in March 7, 2000, and had surgery.  [R. at 173].

Plaintiff complained of epigastric pain on October 3, 2000.  Plaintiff noted that the pain lasted from two to four minutes and for approximately four to five days.  [R. at 158].

-- 2 --

Notes dated November 30, 2001, indicated Plaintiff's hobbies included fishing and wood carving.  [R. at 162].

Hand-written notations in Plaintiff's file dated October 29, 2001, provide "How long will he be off work?"  The handwritten answer provides, "Don't know – I don't have objective evidence that he can't work now."  [R. at 128].

On January 30, 2002, Plaintiff was examined at St. Francis in an "Outreach Sleep Study."  Plaintiff was determined to have obstructive sleep apnea syndrome, and recommendations were that Plaintiff have a 14 cm contour mask.  [R. at 116].

Plaintiff was examined by Beau C. Jennings, D.O. on June 28, 2002.  He noted Plaintiff complained of shortness of breath but was able to walk one-fourth of one mile on ground level before resting.  Plaintiff was 5'11" and 433 pounds.  The doctor recorded all of Plaintiff's range-of-motions as full.  [R. at 179, 182-83].  Plaintiff had no joint redness or swelling, good grip strength, and a normal heel toe gait.  [R. at 179].

A Physical Residual Functional Capacity Form was completed by Thurma Fiegel, M.D., on August 13, 2000.  Plaintiff was noted as able to lift 20 pounds occasionally, ten pounds frequently, sit for six out of eight hours, and stand for six out of eight hours.  [R. at 195].

A Physical Medical Source Statement was completed by Jack E. Cheek, D.O., on October 29, 2003.  He noted Plaintiff was morbidly obese and had sleep apnea.  [R. at 204].  He indicated that Plaintiff could sit for two hours at one time, stand for ten to thirty minutes at one time, and walk for ten to thirty minutes at one time.  In an eight hour day, Plaintiff could sit for six hours, stand for two hours, and walk for ten to thirty minutes.  [R.

at 204].  Plaintiff could frequently lift five pounds, occasionally lift 6 - 20 pounds, and never lift 26 - 100 pounds.  [R. at 204].

Gregory D. McGriff, M.D., on October 24, 2002, wrote that Plaintiff was currently under his care, and that he had previously seen on October 24, 2002.  [R. at 207].  He noted that for the past two years Plaintiff "has suffered from both severe chest pain syndrome and exertional dyspnea limiting his ability to perform even the most menial of tasks.  His severe osteoarthritis manifesting with knee pain makes it virtually impossible to walk on any but the most even surfaces and then only for very short distances.  The above problems are certainly exacerbated by his increased body mass index (BMI).  All in all, Mr. Bell is certainly disabled and most likely has a permanent disability."  [R. at 207].

Doctor reports dated October 24, 2002, from "PCC Mental Health/Social Service" note that Plaintiff was not doing well and having problems with his sinus.  Plaintiff felt worried and depressed.  Plaintiff noted that his sleep problems made him irritable and fatigued.  [R. at 217].  Plaintiff was described as alert and oriented, with a calm and cooperative mood.  [R. at 217].  Records dated September 27, 2002, indicated an initial referral for depression.  Plaintiff reported suicidal ideations in the latter part of October 2002.  Plaintiff reported numerous stressors and indicated depression.  [R. at 218].

Plaintiff had a hearing before the ALJ on October 1, 2003.  [R. at 219].  Plaintiff testified that, at the time of the hearing he was 5'11" and 411 pounds.  [R. at 224].  Plaintiff graduated from high school and lived in a mobile home at the time of the hearing.  [R. at 225].  Plaintiff's classes were primarily special education classes.  [R. at 225].

According to Plaintiff, he has problems sleeping.  [R. at 232].  Plaintiff noted that he has to sleep with the head of his bed elevated off of the floor and eight inches higher than

-- 4 --

the foot of the bed.  Plaintiff also sleeps with a CPAP machine.  [R. at 233].  By using the machine Plaintiff manages to sleep about eight hours each night.  [R. at 233].

Plaintiff can vacuum a little and does dishes, but has to sit on a stool to do them. [R. at 234].  According to Plaintiff, Plaintiff cannot do dusting of any kind and it takes Plaintiff about an entire day to do four loads of laundry.  [R. at 234].  If Plaintiff walks too far he has difficulty with his back.  [R. at 235].  Plaintiff drives his wife to shop for groceries because his wife does not drive.  [R. at 238].

Plaintiff also noted that recent medical records indicated that he had some depression.  Plaintiff has not been given any medication for his depression.  Plaintiff stated that his vehicle had problems so Plaintiff was unable to "see the depression doctor to get the medication."  [R. at 237].  Plaintiff noted that in August 2002 he had some suicidal ideations, but that he had not had such ideations recently.  [R. at 238].  Plaintiff was asked "Now, do you think your depression's pretty much resolved itself, then?"  Plaintiff answered "Well, I hope so."  [R. at 238].

Records dated September 29, 2003, indicate Plaintiff complained of epigastric pain for two days.  [R. at 13].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.  *See* 20 C.F.R. § 404.1520.  Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason
> of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo. Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

---

[3/]    Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 1521. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §  405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.   *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).   The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

### III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff could sit from one to two hours at a time or for six hours in an eight hour day, stand for two hours in an eight hour day, and walk for one hour in an eight hour day.  The ALJ concluded Plaintiff could lift or carry 20 pounds occasionally or ten pounds frequently.  [R. at 37].  Based on the testimony of a vocational expert the ALJ found that numerous jobs existed which Plaintiff could perform.

---

[4/]   Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

## IV.  REVIEW

**MENTAL IMPAIRMENT**

Plaintiff initially asserts that the ALJ erred in finding that Plaintiff did not have a severe mental impairment.  Plaintiff acknowledges that Plaintiff's medical records regarding an alleged depression are sparse.  Plaintiff asserts that the ALJ incorrectly determined that Plaintiff's mental impairment was *de minimis* at Step Two, but proceeded to evaluate the asserted impairment at Step Three.  Plaintiff claims that this is error.

Contrary to the assertions by Plaintiff, the ALJ did exactly what the regulations require.  Step Two "is an administrative convenience [used] to screen out claims that are 'totally groundless' solely from a medical standpoint."  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (*per curiam*) (*quoting Farris v. Secretary of HHS*, 773 F.2d 85, 89 n. 1 (6th Cir. 1985)).  In other words, if an ALJ decides that Plaintiff has <u>any</u> "severe" impairment, then the ALJ proceeds past Step Two in evaluating Plaintiff's ability to perform work.  At the remaining steps of the sequential evaluation, <u>all</u> of Plaintiff's asserted impairments, whether or not severe, should be considered.

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairment could be the basis of eligibility under the law, <u>we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity</u>.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523 (emphasis added).  *See also Railey v. Apfel*, 134 F.3d 383 (10th Cir. 1998); Soc. Sec. Rul. 96-8p (July 2, 1996) (ALJ must consider both severe and nonsevere impairments when assessing RFC).

In this case, the ALJ did not err by discussing Plaintiff's mental impairment although the ALJ concluded that Plaintiff's mental impairment was not severe.  Similarly, Plaintiff's allegation that the ALJ erred by finding the mental impairment not severe at Step Two is misdirected because the ALJ proceeded past Step Two, concluding that Plaintiff was not disabled at Step Five of the sequential evaluation.

## FAILURE TO REQUEST A CONSULTATIVE EXAMINATION

Plaintiff additionally asserts that the ALJ failed to request a consultative examination. Plaintiff references 20 C.F.R. § 404.1519(a) as providing that the Commissioner will purchase a consultative examination to resolve a conflict or ambiguity in the medical evidence, and that the Commissioner will secure "needed medical evidence" if the file does not contain such evidence.  Plaintiff references *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997), and asserts that when a claimant has satisfied the burden of establishing evidence to show a reasonable possibility that a severe impairment exists, that the ALJ has the responsibility to order a consultative examination to resolve the issue of the impairment. Plaintiff maintains that the ALJ therefore erred by failing to order a consultative examination regarding Plaintiff's asserted mental impairment.

The medical records to support Plaintiff's position are sparse.  The record contains a September and October 2002 record from Mental Health/Social Service.  Plaintiff was notes as having "depressive d/o NOS."  The records are not from a licensed physician or psychologist.  Plaintiff did not testify before the ALJ until October 2003.  At the October

2003 hearing, Plaintiff acknowledged that he was never prescribed medication for his depression.  Plaintiff asserted that he was to go to a "depression doctor to get the medication, and my vehicle had messed up, and I wasn't able to get back down there to see him."  [R. at 237].  Plaintiff further acknowledged that although he was experiencing suicidal ideation in August 2002, at the time of the hearing he was not experiencing suicidal ideation.  When asked if his depression had resolved itself, Plaintiff answered, "well, I hope so."  [R. at 238].

The Court cannot conclude, based upon this record that the ALJ erred by failing to request a consultative examination with regard to Plaintiff's "mental depression."  The record contains virtually no support for a conclusion that Plaintiff suffers from depression.  Plaintiff asserted he was to be prescribed medication, but evidently between October 2002 and October 2003 was not able to return to the doctor.  Plaintiff, at the hearing, indicated that he "hoped" his depression had resolved itself.  The ALJ had no duty to order additional consultative examinations based upon this evidence.

Plaintiff asserts no other errors in this record.  The decision of the ALJ is affirmed.


Dated this  8th  day of March 2006.


_Sam A. Joyner_
Sam A. Joyner
United States Magistrate Judge